Gary P. KLAHR, Plaintiff,

v.

Samuel P. GODDARD, Governor of the State of Arizona, Wesley Bolin, Secretary of State of the State of Arizona, Defendants.

Civ. No. 5112–Phx.

United States District Court
D. Arizona.

Feb. 2, 1966.

Felke, Simon & Henderson, Scottsdale, Ariz., Evans, Kitchel & Jenckes, Associate Counsel, Phoenix, Ariz., for plaintiff.

Darrell R. Smith, Atty. Gen. of Ariz., John P. Frank, Special Counsel, Phoenix, Ariz., for defendants.

Before POPE, Circuit Judge, and MATHES and WALSH, District Judges.

POPE, Circuit Judge.

This is an action brought by Gary P. Klahr, as plaintiff, on behalf of himself and all of the persons of the voting population of the State of Arizona, against the defendants above named. The purpose of the action, as stated in the third amended complaint dated April 29, 1965, is to compel compliance by the officials of the State of Arizona, who are responsible for the supervision and conduct of the elections therein, with the requirements of the Equal Protection Clause of the Federal Constitution with respect to the apportionment of the seats in the two houses of the Arizona Legislature as outlined in the decisions of the Supreme Court of the United States in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632, and other similar decisions; and also to compel the redistricting of congressional districts within the State so as to equalize the population of each such district as near as may be done in accordance with the rule laid down by the United States Supreme Court in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.

The complaint alleges that by virtue of certain provisions of the Arizona Constitution, members of the State Senate are required to be elected upon a purely geographical basis without regard to the wide differences in population. This, it is claimed, has resulted in an unconstitutional apportionment of the Senate membership.

It is also alleged that the manner prescribed for the apportionment of state representatives within the State results and necessarily always will result in a denial of the equal protection of the law and that in consequence of such malapportionment said provisions respecting the apportionment of members of the House are invalid.

With respect to the congressional districts within the State, it is alleged that the districting for the election of representatives in the United States Congress now provided by § 16–727, subsec. B of Arizona Revised Statutes 1956, is void and unconstitutional in that although congressional district No. 2, according to the United States census for 1960, or according to the total of registered voters for the several districts for the general election of November 2, 1964, represents approximately one-third

of the population, or one-third of the registered voters within the State, yet congressional district No. 1 on either basis represents 51 percent or more of the population or voters of the State while congressional district No. 3 represents 15 percent or less of the population or voters of the State.

Pursuant to the prayer of the complaint a court of three judges was constituted for the purpose of hearing and considering the issues herein. The said court initially ordered that the proceeding be stayed until after the conclusion of the 1965 session of the Legislature. At such session no reapportionment or redistricting was accomplished. The Governor of Arizona called a special session which was convened for the specific purpose of considering and acting upon such matters. The court being advised thereof, ordered that pretrial hearings and trial of the cause be deferred until conclusion of such special session. Sundry proposals to reapportion the Legislature and to redistrict the State for the election of the members of the National House of Representatives were considered by the special session. It enacted a statute for the purpose of reapportioning the Senate, said enactment being commonly known as Senate Bill 11. The said special session adjourned without any action in respect to redistricting the congressional districts or with respect to reapportioning the House of Representatives. Thereupon this cause proceeded to a pretrial hearing resulting in a pretrial order dated October 13, 1965.

As shown by said pretrial order it was stipulated and agreed that the court must accomplish congressional redistricting of the State of Arizona. Said pretrial order discloses that the following issues with respect to redistricting remain for determination by the court upon trial: whether all three congressional districts should be redefined and realigned as asserted by the plaintiff, or whether the boundaries of said districts be readjusted only to the extent of making the population of districts 1 and 3 substantially equal without disturbing the boundaries

of district 2, as asserted by the defendants; whether such congressional redistricting should be based upon the most recent voting registration figures, as asserted by plaintiff, or upon the census population figures taken from the 1960 census as asserted by the defendants.

Both parties concede that the Arizona constitutional provision for a Senate composed of two members from each of the fourteen counties of the State is invalid; and that if the court determines that Senate Bill 11, as enacted at the special session aforesaid, does not validly apportion the Arizona Senate membership, then reapportionment of the Senate must be accomplished by the court in this action.

With respect to legislative reapportionment, the issues between the parties, as made by said pretrial order, are as follows: whether Senate Bill 11, as enacted, validly apportions the membership of the Arizona Senate as claimed by defendants, or whether the same is invalid as accomplishing an invidious and unconstitutional discrimination against the majority of the voters of the State and against those subdivisions of the State containing the greater portion of its population. Whether, if a reapportionment of the Senate be ordered by the court the same should be based upon the 1960 census figures, as asserted by the defendants, or whether the reapportionment should be based upon voter registration figures; and whether upon such reapportionment of the Senate, the court may include more than one county in a single district as contended by the plaintiff and denied by the defendants.

Another issue presented is whether or not the Arizona House of Representatives is presently invalidly apportioned as asserted by the plaintiff, or whether the present system is proper and lawful. It is contended that any attempted reapportionment of the House by this court would be premature at the time of trial of this action in view of the constitutional power of the Secretary of State to make reapportionment within the year 1966.

### FINDINGS.

■ 1. The court finds that the population in congressional districts 1 and 3 is unequal and disparate and constitutes an unconstitutional imbalance; and that such imbalance renders the continued following and enforcement of the apportionment requirements of that portion of § 16–727 which relates to congressional districts 1 and 3 void, unconstitutional and prohibited within the meaning of the decision of the Supreme Court of the United States in Wesberry v. Sanders, supra.

The court finds that congressional district No. 2, as now established, is valid and properly apportioned and that there is no occasion for this court to undertake to alter the boundaries thereof. The population of the State of Arizona, as disclosed by the 1960 census, was 1,302,161. The same census discloses that the then population of congressional district No. 2 was 440,415, or 34 percent of the population of the State, that is to say, substantially one-third of such population, and the same represents, as to congressional district No. 2, an appropriate apportionment of the State's population.

2. The court finds that because congressional districts No. 1 and No. 3, as heretofore constituted, are adjacent to each other, it is feasible to adjust and correct the malapportionment between such two districts by moving a portion of Maricopa County, which is district No. 1, into and making the same a part of district No. 3. According to the 1960 census, district No. 1 then had a population of 663,510, while congressional district No. 3 had a population of 198,236, or 51 percent and 15 percent respectively of the state population. The court finds that an appropriate transfer of populated areas from congressional district No. 1 to congressional district No. 3, may be made by drawing a new line through Maricopa County in the manner which was proposed by a conference committee of the two Houses during a special session of the Legislature, aforesaid, which line was as follows: "Beginning at a point where the Agua Fria River intersects the Maricopa-Yavapai county boundary line; thence south along the Agua Fria River to its intersection with Olive Avenue; thence east along Olive Avenue (Dunlap Avenue) to its intersection with Nineteenth Avenue; thence south along Nineteenth Avenue and its alignment to its intersection with the Maricopa-Pinal county boundary line." All portions of Maricopa County lying west of the line so drawn are to be transferred to and become a part of congressional district No. 3.

The change thus made in respect to congressional districts 1 and 3 will accomplish a reapportionment of congressional districts (using 1960 census figures) as follows: district No. 1, 461,495, district No. 2, 440,415, district No. 3, 400,251.

■ 3. The court finds that in making the several reapportionments herein provided for, it can do so most accurately by basing its findings upon the figures appearing in the 1960 census. For the purpose of supporting his contention that the reapportionment should be based upon 1964 populations, plaintiff has through his witnesses undertaken to project an estimated 1964 population by calculating the ratio of registered voters to population in various counties in census years and then applying that ratio to the registration of voters for the 1964 elections. The court finds that the calculations thus produced by the plaintiff have not been established with sufficient certainty and accuracy to warrant their use by the court to determine an appropriate reapportionment of congressional districts and state legislative districts in this decree. Recent census figures secured by actual count in the City of Phoenix, in Pinal County and in Yuma County, depart so far from plaintiff's estimates and calculations of 1964 population in those areas that the court feels justified in rejecting the calculated 1964 population figures as a basis for reapportionment in this case.

■ 4. The court finds that the said Senate Bill 11, as enacted at the special

session of the Arizona legislature and signed by the Governor, accomplishes an unconstitutional and invidious discrimination in the apportionment of the seats in the State Senate. Said Senate Bill 11 bears evidence of having been thrown together as a result of considerations wholly apart from those laid down as compulsory by the decisions of the Supreme Court. As disclosed by plaintiff's Exhibit No. 14, the 31 seats in the Senate provided for by said bill are apportioned by assigning to Maricopa County 13, to Pima County 5, to Pinal County 2, and one each to all of the other eleven counties regardless of their wide disparity in population. An ideal population per senate member for a senate of 31 members, as contemplated by Senate Bill 11, would be 42,005 persons. As a result of the apportionment provided for by Senate Bill 11 certain of said counties would depart from the ideal size by excessive percentages. Thus Cochise County, with 1960 population of 55,039, exceeds the ideal population for one senator by 13,034, or in excess of 31.03 percent. That is to be compared with Mohave County with a 1960 population of 7,736, which is 34,269 less than the ideal population, or a departure of 81.58 percent. Such is a voter weight ratio of over seven to one. Similar discrepancies exist throughout Senate Bill 11 which the court hereby finds accomplishes an invidious discrimination against the more populous counties and the voters thereof.

█ 5. The court finds that any apportionment of membership of the House of Representatives accomplished pursuant to Art. 4, Pt. 2 § 1 of the Arizona Constitution, A.R.S., through the action of the Secretary of State, will necessarily result in an invidious and unconstitutional discrimination against the larger centers of population of the State and the voters thereof. Under said constitutional provision the Secretary of State is required to begin his apportionment by awarding to each county one representative. Plaintiff's Exhibit 15 discloses that Apache County, under the constitutional system provided, would be granted one representative to the 80 member House, whereas Yavapai County would be granted three representatives. On the basis of the 1960 population Apache County, with a population of 30,438 would have but one representative, whereas Yavapai County, with a population of 28,912 would have three members. This would create a voter weight ratio of nearly four to one. Apportionment under the State constitution will result in deviations from the ideal population per representative ranging from a high of plus 87 percent to a low of minus 52.47 percent. The court finds therefore that reapportionment of the said House is necessary.

█ 6. The court finds that an appropriate and validly apportioned Legislature of the State of Arizona elected in the year 1966 would consist of 30 senators and 60 representatives elected from eight legislative districts within the State. The apportionment of said members of the House and of the Senate hereinafter set forth and described in the table following will meet as near as may be the requirements of the Fourteenth Amendment to the Constitution of the United States as interpreted in the decisions aforesaid and the same should be established and put into effect as a temporary and provisional reapportionment of the Legislature of the State of Arizona.

This finding is based upon the United States census figures for the year 1960, which, as above stated, the court finds to be the most reliable and dependable basis for reapportionment in accordance with this decree. Using those figures an ideal apportionment for a Senate of 30 members would provide a population of 43,405 for each member and for a House of Representatives of 60 members the ideal population for each member would be 21,703.

The following tabulation indicates the appropriate areas of legislative districts which the court finds to be necessary to accomplish the required reapportionment, the number of representatives or senators to be elected from each district, the population of such district, and the devia-

tion percentages from the ideals above referred to, which will result from such reapportionment. The tabulation aforesaid is as follows:

HOUSE — Ideal Population Per House Member, 21,703

| District Number | Counties | Number of Representatives | Population | Deviation Percentage From Ideal |
|---|---|---|---|---|
| 1 | Mohave-Yavapai | 2 | 36,648 | +15.569 |
| 2 | Cochise-Graham-Santa Cruz | 4 | 79,892 | + 7.971 |
| 3 | Navajo-Apache-Greenlee | 4 | 79,941 | + 7.915 |
| 4 | Coconino | 2 | 41,857 | + 3.570 |
| 5 | Pinal-Gila | 4 | 88,418 | − 1.852 |
| 6 | Yuma | 2 | 46,235 | − 6.519 |
| 7 | Pima | 12 | 265,660 | − 2.004 |
| 8 | Maricopa | 30 | 663,510 | − 1.907 |

SENATE — Ideal Population Per Senate Member, 43,405

| District Number | Counties | Number of Senators | Population | Deviation Percentage From Ideal |
|---|---|---|---|---|
| 1 | Mohave-Yavapai | 1 | 36,648 | +15.567 |
| 2 | Cochise-Graham-Santa Cruz | 2 | 79,892 | + 7.969 |
| 3 | Navajo-Apache-Greenlee | 2 | 79,941 | + 7.913 |
| 4 | Coconino | 1 | 41,857 | + 3.566 |
| 5 | Pinal-Gila | 2 | 88,418 | − 1.852 |
| 6 | Yuma | 1 | 46,235 | − 6.519 |
| 7 | Pima | 6 | 265,660 | − 2.006 |
| 8 | Maricopa | 15 | 663,510 | − 1.909 |

(In the foregoing table plus percentages indicate what may be termed "over representation" of the district involved, while the minus figures represent "under representation.")

The court concludes:

1. That the aforesaid State constitutional provision above referred to and included in Article 4 Pt. 2 § 1, to the extent that it is inconsistent with the provisions of this decree, and in the respects hereinbefore set forth, is void and of no effect, in consequence of its providing for a system of apportionment of the House of Representatives of the Arizona Legislature in violation of the Fourteenth Amendment to the Constitution of the United States as construed and interpreted in the decisions of the Supreme Court above referred to.

2. That the legislative enactment of the special session of the Arizona Legislature above referred to and commonly known as Senate Bill 11, as enacted and signed by the Governor, is void and of no effect in consequence of its providing for a system of apportionment of the members of the State Senate which is in violation of the said Fourteenth Amend-

ment as construed and interpreted in the decisions aforesaid.

3. That those portions of § 16–727 of the Arizona Revised Laws 1956 which define the boundaries of congressional district No. 1 and of congressional district 'No. 3, are to the extent above referred to, void and unconstitutional for the reasons set forth in the decision of the United States Supreme Court in Wesberry v. Sanders, supra.

4. The constitutional and statutory provisions of the State of Arizona heretofore and now in effect with respect to the membership and apportionment of membership of the State Legislature, including said Senate Bill 11, are so constituted as to bring about an invidious and unconstitutional discrimination against the majority of the voters of the State and against those subdivisions of the State containing a greater portion of the population thereof. Such discrimination prevails both in respect to the Senate and in respect to the House of Representatives.

5. The said State Legislature has had ample opportunity, both at its regular and special sessions, to provide a valid reapportionment of its membership, and a valid provision for congressional redistricting of the State. It has failed to accomplish the required reapportionment and redistricting notwithstanding previous suggestions in the orders of this court that the primary duty in this respect is upon the legislature. The required procedures in preparation for the 1966 primary and general elections must be taken shortly and without further delay and since there is no prospect of legislative action in respect to these matters it is the duty of the court now, as agreed by the parties, to order into effect a redistricting of congressional districts and a reapportionment of both Houses of the Arizona Legislature for the 1966 primary and general elections and for such further elections as may follow until such time as the Legislature itself may adopt different and valid plans for districting and reapportionment.

6. An appropriate and validly apportioned Legislature elected in the year 1966 would consist of 30 senators and 60 representatives elected from the eight legislative districts set forth in the table set out in the foregoing findings. Such a reapportionment will meet as near as may be the requirements of the Fourteenth Amendment to the Constitution of the United States as interpreted in the decisions aforesaid and the same should be established and put into effect as a temporary and provisional reapportionment of the Legislature of the State of Arizona.

7. That for the purpose of carrying out effectively the reapportionment herein provided for, it is necessary and desirable that nomination petitions and nomination papers for the selection of the members of the State Legislature be filed as hereinafter in this decree provided, and that the notices to be given by the Secretary of State pursuant to § 16–501 of Arizona Revised Statutes 1956 and by the Governor pursuant to § 16–705 of said statutes, shall be made to conform to the provisions of this decree as hereinafter provided. It is also necessary to accomplish said reapportionment to make the provisions set forth hereafter in this decree for the election returns, the canvass of the returns, and certificates of election of the members of the Legislature.

8. For the purpose of further facilitating the operation of the reapportionment plan herein set forth, it is desirable that the parties hereto shall carry out the duties hereinafter imposed upon them in respect to the ascertainment and establishment of subdistricts of legislative districts 7 and 8, all to the end that in those larger populated districts the voters not be confronted with an excessive list of candidates at the primary or general elections for members of the legislature.

## DECREE

By reason of the foregoing findings and conclusions,

It is ordered, adjudged and decreed as follows:

That Art. 4, pt. 2 § 1, of the Constitution of the State of Arizona, and the Act of the special session of the Legislature, above referred to, and commonly described as Senate Bill 11, as enacted and signed by the Governor, and § 16–727 of the Arizona Revised Statutes of 1956, to the extent that the same are in conflict or not in conformity with the reapportionment plan and the redistricting plan set forth herein, are void and unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States or void under Article 1 § 2 of said Constitution; and the defendants herein are perpetually enjoined from in any manner enforcing or recognizing the same and from conforming thereto and no members of Congress and no Legislature of the State of Arizona shall hereafter be elected or constituted as provided in the said void portions of said sections.

That there shall be and there is hereby established a system of congressional districts for the State of Arizona as follows:

Congressional district No. 1 shall comprise that part of the County of Maricopa described as follows: Beginning at a point where the Agua Fria River intersects the Maricopa-Yavapai county boundary line; thence south along the Agua Fria River to its intersection with Olive Avenue; thence east along Olive Avenue (Dunlap Avenue) to its intersection with Nineteenth Avenue; thence south along Nineteenth Avenue and its alignment to its intersection with the Maricopa-Pinal county boundary line; thence follow Maricopa county boundary line east, north, east, northwesterly, southwesterly, northwesterly, and west to its intersection with the Agua Fria River, the point of beginning.

Congressional district No. 2 shall comprise the same counties presently provided for in § 16–727 of the Arizona Revised Statutes of 1956.

Congressional district No. 3 shall comprise the counties of Apache, Coconino, Gila, Graham, Greenlee, Mohave, Navajo, Yavapai, and that portion of Maricopa County not included within congressional district No. 1, as above described.

That the defendants are enjoined from proclaiming, certifying or conducting any election of the members of the State Legislature in any manner other than as set forth in the findings or conclusions herein, and in particular, all election proclamations of the Governor, as provided in § 16–705 of said Arizona Revised Statutes and by the Secretary of State, as provided in § 16–501 of said Arizona Revised Statutes, shall in respect to the officers for senator and representative of said State Legislature state and specify the offices and legislative districts herein set forth to be filled, and the defendants are enjoined from making any proclamation inconsistent with this direction.

Nomination petitions and nomination papers for offices and positions herein referred to, regardless of whether the candidate in question is to be voted for in one county or in more than one county, shall be filed with the Secretary of State in the manner provided by § 16–301 of said Arizona Revised Statutes, and not otherwise.

The returns after canvass by the board of supervisors of votes at the elections for said offices shall be certified to the Secretary of State as provided in §§ 16–571 and 16–984 of said Arizona Revised Statutes and the same shall be canvassed by the Secretary of State in the manner provided by §§ 16–571 and 16–991 of said Arizona Revised Statutes, and certificates of nomination and election shall be issued by the Secretary of State as provided in §§ 16–571 and 16–992 of said Arizona Revised Statutes, regardless of whether the person so elected is voted for in one county or in more than one county.

It is further ordered that Maricopa County and Pima County shall be divided into sub-districts. Fifteen such sub-districts shall be established in Maricopa County to be designated 8–A to 8–O,

inclusive, the same to be as nearly equal in population as possible, and composed of contiguous areas.

Each of the parties hereto is directed to file with the Clerk of this court, within thirty days after the filing of this decree, his or their proposals for a plan for so subdividing said County. In designing such plans, the parties may base the same upon the 1964 voter registration figures, or upon such other statistics as they may find available.

Six sub-districts shall be established in Pima County, in like manner, to be designated as 7–A to 7–F, inclusive. Plans or proposals for such Pima County subdivisions shall be filed by the parties in the same manner as herein provided in respect to Maricopa County.

After examination of the said plans of the parties the court will supplement and modify this decree so as to incorporate a definition of the boundaries of such sub-districts.

One Senator and two Representatives shall be elected from each of said sub-districts. In all other cases, the Senators and Representatives from the legislative districts herein prescribed shall be elected at large from their respective districts.

It is further ordered, adjudged and decreed that the foregoing reapportionment of both Houses of the Arizona Legislature, together with the directions and requirements relating thereto, is ordered into effect for the purposes hereinbefore stated. The defendants herein, and all those acting by and under their authority and pursuant to the proclamations and directions by them made, are hereby ordered and directed to accept filings and conduct elections in accordance with the provisions of this decree, and they are hereby enjoined and restrained from accepting filings or conducting elections in any manner inconsistent with the provisions of this decree.

It is further ordered, adjudged and decreed that this court does and shall retain jurisdiction of this cause until after said Legislature to be elected, as aforesaid, in 1966, shall have taken office and shall have concluded its first annual session. Such jurisdiction is retained for the purpose of passing upon the aforesaid proposals for sub-districts and for the purpose of adjudging and passing upon the validity of any plan of reapportionment or of any plan for redistricting enacted by the said succeeding legislative session and to compel compliance with this decree and the constitutional provisions herein referred to.

## OPINION

This opinion is designed to accompany the court's decree and is for the purpose of explaining the views which have led to its drafting in final form. We have accepted the defendants' contentions concerning the appropriate mode of adjusting the lines of these congressional districts so that they will be substantially equal in population. Various suggestions for the drawing of other lines to move portions of district No. 1 into district No. 3 were made at the hearings, but we choose to adopt the defendants' suggestions since the line of demarcation they proposed had been accepted as a compromise by the conference committee of the two Houses of the Arizona Legislature at the special session. The proposal was accepted by vote of the Senate. In the House it received 38 favorable votes as against 31 negative votes, 11 members of the House being recorded as not voting. We assume the abstentions were due to the fact that the legislative session was near its end and a number of members were absent. Although under the rules of the House the 38 majority was insufficient to pass the measure the vote shows a favorable acceptance by most members of both houses and for this reason we as a court considered it appropriate to adopt this plan for redistricting. Since district No. 2 is at present substantially in compliance with the constitutional requirement, we find no reason for disturbing its boundaries.

Our findings adequately show, we think, the reason for rejecting Senate Bill 11 as an appropriate method for apportioning the Senate seats. We know of nothing in any of the Supreme Court

decisions which would warrant this statute's extensive deviations from the "one man one vote" rule implicit in such decisions. An analysis of the figures furnished on plaintiff's Exhibit 14 makes it obvious Senate Bill 11 is shot through with invidious discrimination.

■ In an effort to sustain and justify the provisions of Senate Bill 11, the defendants have relied on arguments which have been expressly repudiated by the Supreme Court. One of the main contentions of the defendants is that the apportionment plan of Senate Bill 11 is appropriate and proper because it serves to give recognition to the varying identifiable needs and regional, social and economic interests of the geographic areas involved. This is the argument which may be found in the dissenting opinion in Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, at pp. 750, 751, 84 S.Ct. 1459, at p. 1481, 12 L.Ed.2d 632. There Mr. Justice Stewart said: "The very fact of geographic districting, the constitutional validity of which the Court does not question, carries with it an acceptance of the idea of legislative representation of regional needs and interests." He referred to "the important goal of ensuring a fair, effective, and balanced representation of the regional, social, and economic interests within a State." The opinion of the Court expressly rejected this argument. In the Court's opinion at page 738, 84 S.Ct. at page 1474 the Court said: "But appellees' argument, accepted by the court below, that the apportionment of the Colorado Senate, under Amendment No. 7, is rational because it takes into account a variety of geographical, historical, topographic and economic considerations fails to provide an adequate justification for the substantial disparities from population-based representation in the allocation of Senate seats to the disfavored populous areas." And see the discussion in the footnote where the Court expressly rejected the lower court's attempt to justify varying population bases in order to accord recognition to "the state's heterogeneous characteristics." The same rejection of that argument is made in Reynolds v. Sims, 377 U.S. 579, 580, 84 S.Ct. 1391, where the Court said: "But neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes."

Another contention made by the defendants is that to combine some of these counties to create one legislative district would produce a district whose size and area is so great as to make campaigning therein enormously difficult. This is the argument which was rejected in Reynolds v. Sims, supra, where the Court said at p. 580, 84 S.Ct. at p. 1391, that such an argument in these days of modern improvements in transportation and communication sounds rather hollow and is "unconvincing". At p. 581, 84 S.Ct. at p. 1391, the Court said: "Carried too far, a scheme of giving at least one seat in one house to each political subdivision (for example, to each county) could easily result, in many States, in a total subversion of the equal-population principle in that legislative body." The Court disapproved any system whereby "population is submerged as the controlling consideration in the apportionment of seats in the particular legislative body." The decisions of the Supreme Court, in line with Reynolds v. Sims, make it plain that where population is sparse, areas to be represented must necessarily be large. To hold otherwise is to go against the Supreme Court's doctrine in this field.

■ The findings indicate our reasons for requiring apportionment to be made at this time on the basis of the 1960 census. Plaintiff made a valiant effort to demonstrate what was the 1964 population of these various areas. If the 1964 population could be demonstrated with certainty, much could be said in favor of apportionment upon such a basis. It was sufficiently demonstrated that Arizona has a most rapidly increasing population and that increases are not uniform throughout the State. Witnesses produced by the plaintiff undertook to determine the approximate population of

various counties by demonstrating past ratios between registered voters and population in those counties. Then assuming a like ratio would exist in 1964, these witnesses calculated the 1964 population by applying a similar ratio to the number of registered voters in these areas as established for the 1964 election. We know judicially that since the trial a special census conducted by the United States Bureau of the Census in Pinal County has shown a population in that county substantially less than that testified to by the plaintiff's witnesses. On the other hand, another special census similarly made in Yuma County has shown a substantially larger population in that county than that arrived at by plaintiff's witnesses. At the trial the defendants established the fact that special census figures for the cities of Phoenix and Tucson indicated a materially smaller population for those areas than those calculated by plaintiff's witnesses. For these reasons we are not satisfied that the estimates or calculations of 1964 population produced at the trial are sufficiently reliable or dependable to permit the basing of our decreed reapportionment on them.

■■■ Our findings with respect to the invalidity of the constitutional system of apportionment of the Arizona House of Representatives are based largely upon the showing made by the plaintiff in his Exhibit 15, and we are convinced that the Secretary of State cannot by following the present State constitutional provision turn up with a properly apportioned House. The Secretary of State necessarily starts with a disproportion through the requirement that each county start with one representative. The startling and striking disproportion with respect to the representation of Apache County and Yavapai County in the House of Representatives set up under the provisions of the Constitution mentioned, may be explained by the fact that Apache County, with a large proportion of Indian population, would appear to cast a light vote as compared with the population of Yavapai County with a compara-

tively heavy vote. The Section of the Constitution here involved provides for extra representation on the basis of ballots cast in the election for Governor. This tends to bring about an unacceptable apportionment for the reasons discussed in WMCA, Inc. v. Lomenzo, D.C., 238 F.Supp. 916, 924.

In arriving at the number of Senators and Representatives we considered the possibility of a reapportionment of a House of 80 members, its present size. Such an effort, as any one who tries it will discover, cannot produce a result consistent with any degree of preservation of county lines. Provision for a House of 60 members is consistent with the constitutional provision for a House "not to exceed 80 members." The arrangement for identical senatorial and representative districts will provide a desirable simplicity.

The reason for requiring nomination papers and election returns to be filed with the Secretary of State, and for requiring canvass of returns to be made in that office and certificate of election to be issued by the Secretary, is that we have here a substantial number of districts composed of more than one county. For the purpose of avoiding confusion in the operation of the election machinery for the reapportioned legislature we have required uniformity in this respect regardless of the number of counties involved.

We have provided for the creation of subdistricts in the two most populous counties as a desirable means of procuring intelligent voting in those counties. Thus if 30 representatives are to be elected from Maricopa County and two principal parties are to nominate candidates for those offices, it is plain that each party would endeavor to nominate at least 30 nominees, and it is conceivable that there would be at least two candidates for each nomination which might well result in 60 candidates in each party for nomination in the primary election. This would mean that the voters of the county would be confronted with some 120 aspirants for nomination and

at the general election with 60 candidates, such a system would not tend to intelligent voting. The Legislature at its special session, in enacting Senate Bill 11, wisely we think, made provision for separate senatorial districts in Maricopa and Pima counties, such districts to be prescribed by the board of supervisors. We note that the Bill prescribed no standards to be followed by the board of supervisors such as those contained in Art. 4, pt. 2 § 1 of the State Constitution. We have also rejected suggestions that we should limit our decree to a requirement of an election of all members of the Legislature at large within the entire State. We deem it our duty to provide as workable a system as may be possible. Because we cannot find in the record any readily understandable guide to permit us to define appropriate subdivisions of these two large counties, we have called on the parties to supply us with data and plans for this purpose.

■ We think that this does not impose an impossible task upon the parties. For the purpose of defining these subdistricts within these two counties it is plain that there are no available census figures. But because it cannot be assumed that within a single county there are widely variant ratios between voter registration and population, it is clear that this subdistricting can be done on the basis of the 1964 voter registration figures. See Buckley v. Hoff, D.Vt., 243 F.Supp. 873, 875–876. Plaintiff's Exhibit 11a discloses that this subdistricting is possible. That Exhibit uses estimated population figures projected, through application of a stated ratio to registered votes, which amounts to about the same thing as here suggested. (Instead of assigning 15 senators to Maricopa it assigns 15⅔.) We would hope that the parties might find it possible to agree upon a plan for defining these subdistricts.

■ The defendants' motion to dismiss as to the defendant Governor is denied. We deem it essential that he should be required to list in his proclamations under § 16–705 of the Arizona Revised Statutes, the several offices set forth in our decree among the "offices to be filled" at the 1966 elections.

MATHES, Senior District Judge.

For the reasons stated in the majority opinion, I concur in the Court's denial of defendants' motion to dismiss the action as to the Governor. But I feel compelled, with all due deference, to dissent from the judgment insofar as it devises a Federal-made congressional and legislative reapportionment scheme for the State.

My views as to the propriety and competency of Federal courts affirmatively seeking to impose a reapportionment plan of their own making upon any State are fully stated in Hearne v. Smylie, 225 F.Supp. 645 (D.Idaho 1964). These views were promptly rejected by the Supreme Court of the United States. [378 U.S. 563, 84 S.Ct. 1917, 12 L.Ed.2d 1036 (1964); see: Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Lucas v. Forty-Fourth Gen. Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).]

I am duty bound, then, by the doctrine of *stare decisis,* to follow the decisions of the Supreme Court, and to heed the requirements of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States as interpreted by the most recent decisions of the Supreme Court. So I must assume, although I am unable to comprehend how, an "unconstitutional" State legislature can possess the power to enact a constitutional scheme of reapportionment; failing which a Federal court has the power to "enact" a reapportionment plan of its own, and by some legal legerdemain convert that plan into positive State law.

Amidst all the precedent-shattering language of Reynolds v. Sims, supra, is the admonition that, in imposing a scheme of reapportionment upon any State, a Federal court should always "accommodate the relief ordered to the

apportionment provisions of state constitutions insofar as is possible." [377 U.S. at 584, 84 S.Ct. at 1393.]

On the same day the Supreme Court declared: "It is simply impossible to decide upon the validity of the apportionment of one house of a bicameral legislature in the abstract, without also evaluating the actual scheme of representation employed with respect to the other house." [Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 673, 84 S.Ct. 1429, 1439, 12 L.Ed.2d 595 (1964).]

Applying the slogan-rule of "one person, one vote", it must be conceded that, by reason of the disparity of population among the fourteen counties of Arizona, Art. 4, Pt. 2, § 1, of the Arizona Constitution, to the extent that it provides for the election of two senators from each county, violates the Equal Protection Clause of the Fourteenth Amendment, as now interpreted by the Supreme Court. [Reynolds v. Sims, supra, 377 U.S. 533, 84 S.Ct. 1362.]

Apparently acting upon that assumption, the present Arizona Legislature has recently enacted Senate Bill 11, which provides for at least one senator from each of the fourteen counties, with five allotted to Pima County [Tucson] and thirteen to Maricopa County [Phoenix].

Considered, as it must be, along with the apportionment of the House of Representatives [see Maryland Committee for Fair Representation v. Tawes, supra, 377 U.S. at 673, 84 S.Ct. 1429], the scheme provided for the Arizona Senate in Senate Bill 11 does not in my opinion dilute "the equal population principle * * * in any significant way" [Reynolds v. Sims, supra, 377 U.S. at 578, 84 S.Ct. at 1390]; and is therefore valid. [Cf. Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965).]

Applying the "equal population principle", it must be conceded that, by reason of the disparity of population among the fourteen counties of Arizona, Art. 4, Pt. 2, § 1, of the Arizona Constitution, to the extent that it prohibits the election of more than eighty members of the House of Representatives for the entire State, while requiring a minimum of one representative for each county, violates the Equal Protection Clause of the Fourteenth Amendment. However, there has been no showing that the remaining provisions of Art. 4, Pt. 2, § 1, pertaining to the House of Representatives, if applied in conjunction with Senate Bill 11, would dilute the equal population principle in any significant way.

While I hold in high regard the views of my distinguished colleagues, I am unable to subscribe to their conclusion that a Federal-Court-made scheme of reapportionment is valid (1) which is based upon population figures a half-decade old; (2) which admittedly allows a known voting-strength disparity of more than 22%, as between District 1 comprising Mohave-Yavapai counties and District 6 comprising Yuma County; and (3) which permits on its face a voting-strength disparity of more than 31% (and, were present-day population figures known, might well permit a much greater voting-strength disparity.)

If reapportionment must be based upon a mathematical standard, there appears no rational basis for departing 30% and more from the exactness of such a standard. The Supreme Court admonished in Reynolds v. Sims: "Citizens, not history or economic interests, cast votes". [377 U.S. at 580, 84 S.Ct. at 1391.] It must be equally correct to say that "citizens, not counties, cast votes". By permitting county lines to govern their plan for redistricting the State, my colleagues have permitted the equal population principle to be unnecessarily diluted to a substantial degree; and it appears to me that no one can say with assurance whether that is not a greater dilution than the plan devised by the Legislature in Senate Bill 11, when considered along with the reapportionment of the House.

Rather than seek to impose a Federal-Court-made scheme of reapportionment upon the State, I would favor enjoining all save elections at large for the 31

Senate seats established by Senate Bill 11, until both the Senate and the House of Representatives of the State shall have been apportioned by the Legislature in conformity with the requirements of the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, as interpreted in the most recent decisions of the Supreme Court of the United States. [See: Scott v. Germano, 381 U.S. 407, 409–410, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).]

I would also declare § 16–727 of the Arizona Revised Statutes, establishing the three Congressional Districts of Arizona, to be invalid under Wesbury v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), and would likewise enjoin further elections, otherwise than at large, until a constitutional congressional redistricting shall have been made.

JAMES A. WALSH, District Judge (concurring specially).

I am unable to understand the statement on page 549 of the opinion of our dissenting brother to the effect that the majority countenances a known deviation percentage *from ideal* as between House District No. 1 and House District No. 6 of more than 22 per cent. As is very clearly shown by the majority's Finding of Fact No. 6, the deviation percentage-wise *from ideal* for House District No. 1 is +15.569 per cent; and the deviation percentage-wise *from ideal* for House District No. 6 is −6.519. It appears that our brother has calculated the percentage difference between *the populations* of the House Districts, rather than the percentage which the decided cases have held to be important, that is, the deviation between the actual population in a legislative district and the population which would be ideal for such district.

As to our brother's further statement that the *majority decision permits on its face a deviation of more than 31 per cent*, I must confess that after restudying the majority's Findings, Conclusions and Decree and the majority's Opinion, I am unable to find any basis for this statement in the dissent.