Nelson G. GRILLS, Plaintiff,

Dorothy C. Duddleston, John P. Gallagher, Miles H. Marshall, Louis Y. Mundy, Joseph W. Summers, Intervening Plaintiffs,

v.

Roger D. BRANIGIN, Edwin M. S. Steers, Thurman M. DeMoss, as Members of the State Election Board of Indiana, Defendants,

United States of America, Intervenor.

No. IP 64–C–101.

United States District Court
S. D. Indiana,
Indianapolis Division.

Feb. 14, 1968.

Judgment Affirmed May 20, 1968.

See 88 S.Ct. 1666.

Nelson G. Grills, pro se.

Beuna Chaney and Hansford C. Mann, Terre Haute, Ind., Leslie Duvall and William H. Sparrenberger, Indianapolis, Ind., for Dorothy Duddleston, John P. Gallagher, Miles H. Marshall and Louis Y. Mundy, intervening plaintiffs.

Marshall F. Kizer, Plymouth, Ind., Patrick E. Chavis, Jr., John O. Moss, Indianapolis, Ind., for Joseph W. Summers, intervening plaintiff.

John J. Dillon, Atty. Gen., of the State of Indiana, and Charles S. White, Chief Counsel, Staff, Indianapolis, Ind., for Roger D. Branigin, Edwin M. S. Steers, Thurman M. DeMoss, as members of the State Election Board of Indiana, defendants.

Edwin L. Weisel, Jr., Asst. U. S. Atty. Gen., Dept. of Justice, Washington, D. C., K. Edwin Applegate, U. S. Dist. Atty., Indianapolis, Ind., for the United States.

Before KNOCH, Circuit Judge, and HOLDER, and DILLIN, District Judges.

## OPINION ON REMAND

### PER CURIAM.

The previous history of the above entitled action in this Court is set out in the opinion of the Court filed February 17, 1966, reported as Grills v. Brani-

gin, D. C., 255 F.Supp. 155. Such previous opinion held, Judge Holder dissenting, that Chapter 205 of the Acts of 1965, enacted by the General Assembly of Indiana and reapportioning Indiana's eleven congressional districts, was constitutional within the provisions of Article 1, § 2 of the Constitution of the United States.

The intervening plaintiffs, Dorothy C. Duddleston, et al., thereafter appealed such decision to the Supreme Court of the United States. On January 9, 1967, that Court announced its opinion, Duddleston et al. v. Grills et al., 385 U.S. 455, 87 S.Ct. 611, 17 L.Ed.2d 508, vacating the judgment and remanding the case for further consideration in light of Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501, decided the same day, Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. No timely petition for rehearing was filed, and the mandate of the Court has now been issued.

This Court, having given further consideration to the case in the light of such mandate and of the authorities cited therein, is now of the opinion and therefore finds that said Chapter 205 of the Acts of 1965 is unconstitutional and void by reason of excessive population variances between the congressional districts therein constituted.

A fortiori the Court further finds that Chapter 174 of the Acts of 1941, enacted by the General Assembly of Indiana and being the congressional apportionment act in existence immediately prior to the enactment of said Chapter 205 of the Acts of 1965, is likewise unconstitutional and void.

■ The Court takes judicial notice of the fact that Thurman M. DeMoss has replaced James E. Noland as a member of the State Election Board of Indiana, and that the said Thurman M. DeMoss, Roger D. Branigin and Edwin M. S. Steers now comprise the membership of such Board. The Court therefore, on its own motion, now substitutes the said Thurman M. DeMoss for the said James E. Noland as a party defendant herein.

■ The General Assembly of Indiana, now meeting in regular session, has adopted House Concurrent Resolution No. 6, and has caused a copy of the same to be forwarded to the Court in an informal manner. The resolution requests this Court to supply the General Assembly with "definitive guidelines by which said body can accurately interpret the intent of Article 1 Section 1 of the United States Constitution." We mention such resolution, despite the fact that it is not and could not properly become a part of the record in this case, as a courtesy due the legislative branch of government of the State of Indiana. We are unable to comply with the resolution for the reason that the federal courts have consistently declined to give advisory opinions since the beginning of the Republic. Hayburn's Case, 1796, 2 Dall. 409, 1 L.Ed. 436.

■■ The Court takes judicial notice of the fact that elections were conducted in November, 1966, in each of the eleven congressional districts established by Chapter 205 of the Acts of 1965, and that the congressmen elected at such election were duly seated and are now serving in the Congress of the United States. Nothing herein contained should be construed as casting any doubt upon the validity of their respective elections, nor upon their right to serve out the terms for which they were elected.

■ In view of the findings herein made, it is considered and ordered that the defendants Roger D. Branigin, Edwin M. S. Steers and Thurman M. DeMoss, as members of the State Election Board of Indiana, and their successors in office, be, and they are hereby restrained and enjoined from conducting any further elections pursuant to said Chapter 205 of the Acts of 1965, or Chapter 174 of the Acts of 1941, or any previous Act of the General Assembly of In-

diana purporting to establish districts for the election of congressmen from such State.

The Court retains jurisdiction of this action for the purpose of passing upon any future claims of unconstitutionality made by plaintiffs against any future congressional apportionment adopted by the General Assembly of the State of Indiana, if any, and for such other action in the premises as may be necessary.

### Supplemental Opinion

This action was commenced March 2, 1964 by Nelson G. Grills contesting the constitutionality of the congressional apportionment in Indiana by the Indiana General Assembly. The statute challenged was Chapter 174 of the 1941 Acts of the Indiana General Assembly.

The second phase of the action commenced with the enactment into law of Chapter 205 of the 1965 Acts of the Indiana General Assembly pending Mr. Grills' action. Chapter 205 created new congressional districts. Thereafter, the intervening petitioners entered the pending action and challenged the constitutionality of the new law. This Court adjudged the intervening petitioners were wrong and upheld the constitutionality of the law. Grills v. Branigin, D. C., 255 F. Supp. 155. This ruling was vacated by this Court after the United States Supreme Court on January 9, 1967 remanded the case to this Court for further consideration upon the intervening petitioners appealing this Court's ruling. Duddleston et al. v. Grills et al., 385 U.S. 455, 87 S.Ct. 611, 17 L.Ed.2d 508.

This Court in February of 1967 entered its judgment. Chapter 205 of the 1965 Acts of the Indiana General Assembly was held unconstitutional and void by reason of excessive population variances between the congressional districts therein constituted. Chapter 174 of the 1941 Acts of the Indiana General Assembly was also found unconstitutional and void. The defendants and their successors in office were enjoined from conducting elections pursuant to the voided Acts, or any previous Act of the Indiana General Assembly purporting to establish congressional districts for Indiana. The Court retained jurisdiction of the action for the purpose of passing upon any future claims of unconstitutionality made by plaintiffs against any future congressional apportionment adopted by the Indiana General Assembly, if any, and for such other action in the premises as may be necessary.

The Indiana General Assembly was in its regular session at the time of this judgment. It adjourned sine die and no congressional districting law was enacted although bills were offered, considered and failed to pass. That since the adjournment there has been no further session of said Assembly, nor has the Governor of Indiana issued any call for any special session of said Assembly, nor does he at this time intend to issue any call for any special session. It is highly improbable that said Assembly, if called into session, could agree on any constitutional plan for dividing the State of Indiana into congressional districts. There are vacancies by reason of death and resignation of members of the said Assembly and the Governor of Indiana has not issued writs of election to fill vacancies as provided by Article 5, Section 19 of the Indiana Constitution. If a special session was called, the counties and citizens of those counties in this class action would be unrepresented in the said Assembly session in the creation of congressional districts. Without such representation, their right to petition the said Assembly in session under the Indiana Constitution is impaired and less effective than the citizens of other counties with representation in the said Assembly. It appears impossible for the State of Indiana to enact constitutional legislation creating congressional districts in time for the general election of 1968. The time table under the election laws of Indiana for the declaration of candidacy for

the nomination for the office of Representative for Congress by districts provides for the filing on February 27, 1968 and within the succeeding thirty (30) days in order for such candidate to be voted upon in the primary on May 7, 1968.

This Court's Judgment of February 1967 enjoined the defendants from conducting any further elections pursuant to Chapter 205 of the 1965 Acts of the Indiana General Assembly and under any prior congressional districting law, and the Court retained jurisdiction of the action for such other action in the premises as may be necessary. The retention of jurisdiction was in accordance with the requests of the plaintiff and original intervening plaintiffs that they be given all such other, further and different remedies as the Court may deem just and necessary in the premises.

The original intervening plaintiffs first noticed the Court of the impasse in the Indiana 1968 election on November 8, 1967 and requested this Court to apportion the congressional districts. Thereafter, they filed supplemental petitions to the same effect together with a motion to advance the cause. The original intervening plaintiffs also requested that the December 14, 1967, Public Law 90–196 of the United States Congress (81 Stat. 581, 55 Stat. 761, 2 U.S.C.A. § 2a) requiring Indiana to conduct elections by districts and not at large be declared unconstitutional which request is joined in by the original plaintiff. The defendants support the constitutionality of the law. The recent intervenor requests that the elections not be at large. The defendants merely seek instructions of the Court as to what modifications should be made to the void districts of Chapter 205 of the 1965 Acts of the Indiana General Assembly. The defendants do not ask this Court to apportion and do not allege they have the power to do so. The original plaintiff asks that the Court authorize the defendants to apportion Indiana.

██  Article I, Section 4, Clause 1 of the United States Constitution clearly does not authorize the defendants, as members of the Election Board of Indiana, to create congressional districts. This power is granted to the Indiana General Assembly and the Election Board does not possess the legislative power under the Indiana Constitution nor does it possess judicial power under the Indiana Constitution. In the case of Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795, it was held that Article I, Section 4, Clause 1 of the United States Constitution's reference to the legislature of the several states required complete legislative treatment of a Districting Act which included the approval of the Governor. The legislature of Minnesota had passed a Districting Act which was vetoed by the Governor of that state and the districting of the state by that Act was held not to be in compliance with the United States Constitution which specifically empowered the legislature to create districts.

It is unnecessary for the Court to reach the issue of constitutionality of Public Law 90–196 approved December 14, 1967 and the requested at large election as Section 1 of Chapter 205 of the 1965 Acts of the Indiana General Assembly is in force and effect and requires districting.

██  We find that the correct basis for the apportionment of the State of Indiana should be upon the United States Decennial Census of 1960 which is judicially noticed even though it may be a fact that the census is outdated and the communities of the state have grown disproportionately in population. The eleven (11) congressmen apportioned by Congress to the State of Indiana is based on the census conducted by the United States and not upon any other governmental or private census and cannot be changed until the next United States Census. We think the Census of 1960 must be tolerated until the next official census in order to maintain relative political stability.

██  The citizens of Indiana are entitled to immediate relief, and we undertake in the order to follow the appor-

tioning of the eleven (11) congressional districts geographically among the counties and township units of government in Indiana with a minimal variance in population between such districts. The variance is so minimal that it is not deemed practicable, necessary or advisable to sever the county units except in the metropolitan counties of Lake and Marion as each have more population than would be tolerated in a district. The population of Indiana is 4,662,498 and perfect apportionment would require a district population of 423,863. The districts apportioned have the following population and variances:

| District | Population | Pop. Variance | Per Cent Variance |
|---|---|---|---|
| 1 | 427,267 | +3,404 | +.0080 |
| 2 | 423,227 | − 636 | −.0015 |
| 3 | 418,220 | −5,643 | −.0133 |
| 4 | 423,824 | − 39 | −.00009 |
| 5 | 419,765 | −4,098 | −.0096 |
| 6 | 428,197 | +4,334 | +.0102 |
| 7 | 426,620 | +2,757 | +.0065 |
| 8 | 424,760 | + 897 | +.0021 |
| 9 | 425,360 | +1,497 | +.0035 |
| 10 | 417,158 | −6,705 | −.0158 |
| 11 | 428,100 | +4,237 | +.0099 |

The population overages of the First and Eleventh Districts total 7,641 and reduce the possibility of a perfect district for the other nine districts by 849 from 423,863 to 423,024. The gross percentage variance based on the perfect district of 423,863 population is computed from the Sixth and Tenth Districts for a total of .0260 per cent. The districts as created are compact and so far as possible follow traditional geographic and congressional districting. It was impossible to retain the composition of the previous districts intact because of the effect of the high variances from the perfect district upon other districts. For example, the Eleventh District was previously comprised of Center Township of Marion County which has a population of 333,351 and Wayne Township of Marion County which has a population of 99,722 for a total district population of 433,073 and an overage of +9,210 and a percentage of +.0217. The new Eleventh District retains Center Township, removes Wayne Township from the district and adds the less populated contiguous Townships of Lawrence and Warren in Marion County

reducing the variance to +4,237 for a percentage variance from a perfect district of +.0099.

The Court having jurisdiction of the parties and subject matter of the action,

It is ordered, adjudged and decreed that all members of the House of Representatives of the United States Congress from the State of Indiana hereafter to be nominated and elected under the election laws of the United States and of the State of Indiana, including any special election, shall be nominated and elected from districts in accordance with Section 1 of Chapter 205 of the 1965 Acts of the Indiana General Assembly. This Court's Judgment of February 9, 1967, declaring Chapter 205 of the 1965 Acts of the Indiana General Assembly to be unconstitutional, was intended only to void Sections 2 through 13 of that Act and insofar as that Judgment of February 9, 1967 may be construed to void Section 1 of that Act it is hereby vacated and set aside.

It is further ordered, adjudged and decreed that the limits of each district and

the territory included therein shall be as hereinafter provided until the Indiana General Assembly shall otherwise provide for districts:

First District. The Townships of Calumet, North and St. John, in the County of Lake, as those townships existed and their respective geographical boundaries were established and fixed on January 1, 1965 shall be and constitute the First Congressional District of the State of Indiana.

Second District. The Townships of Hobart, Ross, Hanover, Center, Winfield, West Creek, Cedar Creek and Eagle Creek, in the County of Lake, as those townships existed and their respective geographical boundaries were established and fixed on January 1, 1965 and the Counties of Porter, LaPorte, Starke, Newton, Jasper, Pulaski, White, Tippecanoe and Benton shall be and constitute the Second Congressional District of the State of Indiana.

Third District. The Counties of St. Joseph, Elkhart, Marshall and Kosciusko shall be and constitute the Third Congressional District of the State of Indiana.

Fourth District. The Counties of LaGrange, Steuben, Noble, DeKalb, Whitley, Allen, Adams, Wells and Huntington shall be and constitute the Fourth Congressional District of the State of Indiana.

Fifth District. The Counties of Fulton, Cass, Miami, Wabash, Howard, Grant, Blackford, Clinton, Tipton, Boone, Hamilton and Carroll shall be and constitute the Fifth Congressional District of the State of Indiana.

Sixth District. The Townships of Washington, Pike, Wayne, Decatur, Perry and Franklin, in the County of Marion, as those townships existed and their respective geographical boundaries were established and fixed on January 1, 1965, and the Counties of Morgan, Johnson, Shelby, Rush and Hancock shall be and constitute the Sixth Congressional District of the State of Indiana.

Seventh District. The Counties of Warren, Fountain, Montgomery, Hendricks, Putnam, Parke, Vermillion, Vigo, Clay, Owen, Monroe, Greene, Sullivan, Martin and Brown shall be and constitute the Seventh Congressional District of the State of Indiana.

Eighth District. The Counties of Knox, Daviess, Gibson, Posey, Vanderburgh, Warrick, Pike, Dubois, Spencer, Perry, Crawford, Orange and Harrison shall be and constitute the Eighth Congressional District of the State of Indiana.

Ninth District. The Counties of Floyd, Clark, Washington, Lawrence, Jackson, Bartholomew, Jennings, Scott, Jefferson, Switzerland, Ohio, Dearborn, Ripley, Franklin, Fayette and Decatur shall be and constitute the Ninth Congressional District of the State of Indiana.

Tenth District. The Counties of Madison, Delaware, Randolph, Wayne, Henry, Jay and Union shall be and constitute the Tenth Congressional District of the State of Indiana.

Eleventh District. The Townships of Center, Warren and Lawrence, in the County of Marion, as those townships existed and their respective geographical boundaries were established and fixed on January 1, 1965 shall be and constitute the Eleventh Congressional District of the State of Indiana.

It is further ordered, adjudged and decreed that the defendants, the Secretary of State of the State of Indiana and all election officials of the State of Indiana under the Election Code of Indiana are mandated to conduct all primary, general and special elections for the office of Representative to the United States Congress in accordance with this judgment in the districts created by this judgment.

It is further ordered, adjudged and decreed that the defendants, the Secretary of State of the State of Indiana and all election officials of the State of Indiana under the Election Code of Indiana be and they are hereby enjoined from conducting any primary, general and special elections for the office of Representative to the United States Congress by the use of districts other than those created by

this judgment and by the use of an at large district.

The dissent of our colleague inadvertently would sacrifice factors of judicial apportionment and include factors prevalent in a legislative apportionment which include objectives of retention or elimination of incumbent congressmen, splitting counties of one political hue or another, and other considerations inherent in the unconstitutional 1965 legislative apportionment which was accomplished by that Act.

The majority's apportioned districts achieve the requirements of equality laid down in the Supreme Court Decisions without doing unnecessary violence to the heart of traditional districts, county lines and township lines, including the 1965 Act. Chapter 205 of the 1965 Act of the Indiana General Assembly created only two (2) of the eleven (11) districts within tolerable limits of population. The other nine (9) districts were grossly violative of the tolerable limits of population and necessitated changes. The 1965 Act made gross population shifts from the previous districts established in the 1941 session of the Indiana General Assembly. Some of the districts created by the 1965 Act were not compact. The 1965 Act divided the homogeneous Counties of Floyd and Clark and placed them into two (2) separate districts and the same occurred with respect to the Counties of Elkhart and St. Joseph. A new legislature has been elected since the 1965 legislature and in their regular session they failed to agree that simple adjustments could be made to the districts created by the 1965 Act of the previous legislature. The present unconstitutional districts of 1965 are not sacrosanct, nor are they steeped in tradition. The United States Census of Population for 1960 presents the additional information that there are nine (9) Metropolitan Statistical Areas. They are the adjoining Counties of Clark and Floyd area, the Vanderburgh County area, Vigo County area, Marion County area, Delaware County area, Lake County area, Porter County area, St. Joseph County area, and the Fort Wayne County area. The Lake and Marion County areas respectively contain substantial population in excess of a would be perfect district and must be and are divided. The practical effect of these metropolitan centers of population and their homogeneous influence is that they will be and are the heart of any plan of districting.

We have considered the many prior patterns of legislative districts in Indiana which were established in times when the General Assembly of Indiana was not faced with the fundamentals that are now factors of districting. The traditional heart of every district is retained by this Court's districts, however the accretions and separation of some counties from some districts is necessary to meet the present day factors. For example, the Third District as created by the 1941 Act of the Indiana General Assembly was composed of the Counties of LaPorte, St. Joseph, Elkhart and Marshall. In the 1965 session of the Indiana General Assembly, the Third District was composed of the Counties of LaPorte, St. Joseph, Marshall and Starke with a total population based on the 1960 Census of 384,079 or 39,784 less population than a would be perfect district of 423,863 which was not tolerable. This Court's Third District uses the traditional three (3) Counties of St. Joseph, Elkhart and Marshall and adds the County of Kosciusko. Kosciusko County was a part of the Second District and of necessity had to be separated from the Second District with its accretion of Hobart Township in Lake County and such separation contributes to the compactness of both the Second and Third Districts as constituted by this Court.

The Court does not have the simple facts before it that were present in the case of Klahr v. Goddard, 250 F.Supp. 537 (D.C.Ariz.1966).

The Arizona Three-Judge District Court merely readjusted the formerly unequal legislatively created congressional districts without disturbing the boundary of one (1) apportioned district, which is wholly unlike the facts before us. The Court there was dealing only with the

three (3) congressional legislative created districts of Arizona. District Two was near perfect and Districts One and Three were adjacent to each other. The Court found that because the latter two (2) districts were "adjacent to each other, it is feasible to adjust the malapportionment between such two districts by moving a portion of Maricopa County, which is District No. 1, into and making the same a part of district No. 3". In Indiana, the Court is faced with a far different situation wherein only two (2) of the states eleven (11) congressional districts as heretofore constituted were within constitutionally tolerable population limits. (Districts Five and Nine). The other nine (9) were not within such limits, and, of course, could not all be adjacent to one another. Thus, the Court is faced with a far different problem than merely shifting one (1) county between two (2) adjacent districts. In addition, a new legislature was convened and refused to accept the pattern of the 1965 districting. The adjustments of the 1965 pattern of noncompact districts required the substantial deletion of population from the following districts:

| | |
|---|---|
| First District overage from perfect district of | +30,345 |
| Second District overage from perfect district of | + 7,201 |
| Fourth District overage from perfect district of | +27,074 |
| Sixth District overage from perfect district of | +15,098 |
| Eighth District overage from perfect district of | +19,389 |
| Eleventh District overage from perfect district of | + 9,210 |

and the substantial addition of population to the following districts:

| | |
|---|---|
| Third District underage from perfect district of | −39,784 |
| Seventh District underage from perfect district of | −54,200 |
| Tenth District underage from perfect district of | −17,645 |

The results of necessarily moving approximately 27,000 population out of the First District as established in 1965 to the Second District (and there was no other place they could go) with an overage of approximately 7000 population as established in 1965 makes the Second District with an overage of approximately 33,000 population and some population had to be removed therefrom to another. The problem was multiplied nine (9) times as the above underages and overages of the 1965 districts disclose. The net result of developing the districts is similar to the example of the domino game when one (1) standing domino falls many more are affected by the tumbling domino. In addition counties are not composed of uniform population and vary greatly.

We cannot agree with our colleague in dissent in his attempted adherence to the 1965 pattern of districts. The majority chooses to adhere to the traditional heart of the districting pattern of Indiana insofar as it is reasonable and effects practical homogeneous compactness and as it relates to the Metropolitan Statistical Areas of the 1960 Census. Any other consideration includes the forbidden factor of entering the political thicket of which Justice Frankfurter warned in the case of Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946). Unlike the unconstitutional apportionment of the 1965 Act of the Indiana General Assembly, the majority's apportionment does not pit an incumbent congressman against another of the same political party and does not indulge in grotesque geographical alignment of counties to accomplish such a result. The unplanned result of the majority's districts which adhere to Indiana's historical patterns, tolerable population variances and compactness of a judicial apportionment has resulted in the avoidance of such inference in that no incumbent congressman is pitted against another of the same political party and in only one (1) instance is an incumbent congressman of one (1) party pitted against another of the opposite party. The majority believes Indiana will be

best served with the compactness of the districts created.

The dissent's reference to the summary total of the relocated population of all of the eleven (11) districts of the majority's districting is eye catching but is not based upon any constitutional or legal principle any more than the summary of the total variances of the eleven (11) districts from a perfect district would be. No legislative apportionment has been rendered unconstitutional by the addition of the variances of all districts in a state, nor by the relocation of population. The statistics of necessary population shifts are further exampled by the absolute necessity of moving the entire population of Hobart Township in Lake County (consisting of 39,223) out of the First District into the Second District as created by the 1965 Act of the Indiana General Assembly and moving the entire population of St. John Township of Lake County (consisting of 12,282) out of the Second District into the First District for a total population change of 51,505 to rehabilitate the invalid apportioned First District. This overloaded the Second District by approximately 33,000 population (now we have approximately 84,505 relocations) and it was surrounded by the Third and Seventh Districts with substantial underages in population totaling 93,984; the Fourth District with an overage of 27,074; the Fifth District with an overage of 2,245; and the Sixth District with an overage of 15,098. What county or counties from the perimeter of the Second District containing 33,000 population can be moved to the Third or Seventh Districts? We found no such simple solution. Bordering these districts a similar problem existed. Another example is the Eleventh District as created in 1965 with an overage in population of 9,210 and to diminish this overage one of two (2) townships (Wayne containing 99,722) of the two (2) township districts had to be moved to another district. Hence the computation of relocated population is of no legal significance. The 1965 legislative apportionment was conceived in violation of the law, the districts were so grossly apportioned and so geographically grotesque, that the argument of relocation of population is laid upon an unsound base.

APPENDIX

MAP
OF
INDIANA,

INDIANA 1960 CENSUS POPULATION 4,662,498

PERFECT APPORTIONED DISTRICT POP. 423,863

FIRST DISTRICT IS COMPOSED OF CALUMET TOWNSHIP, NORTH TOWNSHIP, ST. JOHN TOWNSHIP OF LAKE COUNTY.

ELEVENTH DISTRICT IS COMPOSED OF CENTER TOWNSHIP, WARREN TOWNSHIP, LAWRENCE TOWNSHIP OF MARION COUNTY.

SIXTH DISTRICT INCLUDES WASHINGTON TOWNSHIP, PIKE TOWNSHIP, WAYNE TOWNSHIP, DECATUR TOWNSHIP, PERRY TOWNSHIP, FRANKLIN TOWNSHIP OF MARION COUNTY.

| DIST. | POP. | PERFECT DIST. POP. VARIANCE | PERCENTAGE POP. VARIANCE |
|---|---|---|---|
| 1 | 427,267 | 3,404+ | .0080+ |
| 2 | 423,227 | 636— | .0015— |
| 3 | 418,220 | 5,643— | .0133— |
| 4 | 423,824 | 39— | .00009— |
| 5 | 419,765 | 4,098— | .0096— |
| 6 | 428,197 | 4,334+ | .0102+ |
| 7 | 426,620 | 2,757+ | .0065+ |
| 8 | 424,760 | 897+ | .0021+ |
| 9 | 425,360 | 1,497+ | .0035+ |
| 10 | 417,158 | 6,705— | .0158— |
| 11 | 428,100 | 4,237+ | .0099+ |

### CORRECTED AND SUPERSEDING DISSENTING OPINION

DILLIN, District Judge.

I respectfully dissent from so much of the majority opinion as purports to mandate the defendant members of the State Election Board of Indiana, and others not parties to this action, to conduct elections for the office of representative in the Congress of the United States from the State of Indiana from eleven districts created by them. I agree that the defendants should be instructed as to how such elections should be conducted, in accordance with their prayer, and I further agree that this court has jurisdiction to, and should do so. It is not, however, constitutionally permissible for this court to enter the political arena as the majority has done, and to impose upon the powers of a coordinate political department, the General Assembly of Indiana, by adopting a districting scheme of its own devising, bearing no reasonable relationship to the plan last adopted by the General Assembly.[1]

The plain error into which the majority has fallen is that it has misconceived the failure of the politically divided General Assembly to enact a new districting plan to have somehow given carte blanche to this court, or to a majority thereof, to usurp all legislative prerogatives, and to attack the problem as if Chapter 205 of the Acts of 1965 (hereafter "Chapter 205") had never been enacted. But such is not the law. On the contrary, all courts which have spoken on the subject have unanimously held that the judicial power is limited to reviewing the last (albeit unconstitutional) legislative act, and to making such corrections as are *necessary* to bring it into conformity with the "one man, one vote" principle.[2] This must be so, since it has long been the law that the courts have no power to perform administrative acts.[3]

I now consider the plan of the majority, to determine whether it exceeds the bounds of necessity. According to the districting adopted by Chapter 205, three districts contained less than the optimum population of 423,863, by a total of 111,629 persons;[4] the other eight districts therefore had a similar total overage. It is apparent that if available census information is sufficiently detailed in its "building blocks" to enable the transfer of 111,629 persons from the eight larger districts to the three smaller districts in proper ratio, all districts may thus be made to conform completely to constitutional commandments. But the majority plan moves a total of 1,215,606 persons from districts created by Chapter 205 to other districts![5] This gross deviation of more than 1,000 per cent demonstrates beyond a doubt that the majority plan is not an objective one of necessary correction, but rather is an origi-

---

1. "Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." Baker v. Carr, 1962, 369 U.S.

186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663, 686.

2. Maryland Citizens Committee for Fair Cong. Redist. v. Tawes, D. Md., 1966, 253 F.Supp. 731, aff'd sub nom. Alton v. Tawes, 384 U.S. 315, 86 S.Ct. 1590, 16 L.Ed.2d 586; Klahr v. Goddard, D. Ariz., 1966, 250 F.Supp. 537; People ex rel. Scott v. Kerner, 1965, 33 Ill.2d 460, 211 N.E.2d 736.

3. O'Donoghue v. United States, 1933, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356; Old Colony Trust Company v. Commissioner of Internal Revenue, 1929, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918.

4. Table I, Appendix.

5. Table II, Appendix.

nal and novel plan conforming only to the subjective impulses of the majority.

It is true that the majority, after juggling approximately one-fourth of the total population of the State, has created eleven districts more balanced in population than those created by Chapter 205. But to do this, they have impermissibly taken what I shall call the "chain reaction" approach. Using this method, they have moved whole counties from districts already in close balance as created by Chapter 205 to other districts already overpopulated. This, of course, magnifies the problem already existing in the overpopulated districts, and requires the majority to remove from such districts more population than would have been required in the first instance. This goes on in chain reaction form until the aforementioned total of 1,215,606 people and 26 out of 92 whole counties have been rearranged. As an example, the 5th District, as created by Chapter 205, was overpopulated by only 2,247 persons; to correct this district to perfection, therefore, would have required only that 2,247 persons be moved to an adjoining, underpopulated district, such as the 10th, and that no population be added. But the majority has completely reconstituted the 5th District by moving out of it the whole counties of Adams, Wells, Jay, Madison and Huntington,[6] and by moving into it the counties of Wabash, Fulton, Carroll, Cass, Clinton, Boone, Tipton and Hamilton. Of the original Chapter 205 district, only the counties of Miami, Howard, Grant and Blackford (total population 198,042) remain constant!

The census figures are in sufficient detail to enable a court to correct the districting adopted by Chapter 205 to within approximately 100 votes per district, and in fact I have done so.[7] My corrected plan has a maximum deviation of plus 118 in the 4th District and minus 93 in the 2d District. The ratio of the largest to the smallest district in terms of population may thus be computed as 1.00056 to 1. Of equal importance, all corrections have been made in a constitutional rather than a random fashion in that the shifts invariably go from overpopulated districts to underpopulated districts, with one unavoidable exception, so as to disturb Chapter 205 boundaries by the absolute minimum.

In accomplishing this result, I of course commence with the districts as laid out by Chapter 205.[8] The 1st District is overpopulated by 30,345, and must be corrected by the removal of approximately this number. The 1st District is contiguous only to the 2d District, so that the movement must be to that district, although it is already overpopulated by 7,201. This is the one unavoidable exception referred to in the preceding paragraph, wherein population is moved into an already overpopulated district. It is for this reason that it must be corrected first. By inspection of the census tracts and enumeration districts in the 1st District, I find a bloc of 30,297 persons in a geographic area contiguous to the 2d District,[9] and correct the 1st District by moving such bloc to the 2d District, which now becomes overpopulated by a total of 37,498. All further movements will be direct from overpopulated to underpopulated districts.

The 2d District adjoins two underpopulated districts, the 3d and the 7th. Looking ahead, we perceive that the 4th District is overpopulated, and adjoins the overpopulated 2d, 5th and the underpopulated 3d. The 4th may, therefore, only move its surplus into the 3d, whereas the 2d may move either to the 3d or to the 7th. We therefore first correct the 4th,

---

6. Map attached to Table II, Appendix.

7. Table III, Appendix.

8. Map attached to Table I, Appendix.

9. The geographic area is in the southern part of Hobart Township, as follows: Census Tract HOT 56, population 16,934; Census Tract HOT 58, population 8,752; Census Enumeration Districts 16–N, 16–P, and East Gary 2, 3, 7 and 8 in Census Tract HOT 57, total population 4,611. (Metes and bounds descriptions set out in Table IV, Part 2, for areas other than counties and townships).

by moving an area in Elkhart County,[10] population 26,956, into the 3d. The 3d is still underpopulated, so we correct it completely and correct the 2d in part by moving townships in Porter, Jasper, Pulaski and Fulton Counties,[11] population 12,760, into the 3d. We now complete the correction of the 2d by moving townships in Benton and Tippecanoe Counties,[12] population 24,831, into the 7th. Correction of the 7th is continued, and at the same time the 8th is corrected completely by moving Martin County and townships off of the north part of Knox County,[13] total population 19,277, from the 8th to the 7th. Correction of the 7th is completed by the transfer to it of certain townships of Hendricks and Morgan Counties,[14] population 10,196, from the overpopulated 6th. Correction of the 6th is completed by transfer of a population of 4,921 out of Warren Township of Marion County [15] to the underpopulated 10th. Finally, the 5th,[16] 9th,[17] and 11th [18] are each corrected by transfers into the 10th, which is finally corrected thereby.

The corrections above set out are the only proper ones. It is immaterial whether the adjustments are made in the precise order in which I have listed them for illustrative purposes, or in some other order. It is required that the 1st District be adjusted first, to avoid impermissible and unnecessary "chain reaction" transfers. But once this correction is made, it is absolutely immaterial whether the next district adjusted is the 8th, the 11th, the 5th, or any other district. If the rule of avoiding unnecessary transfers is observed, the results must be the same.[19]

The majority adopts the argument found wanting on the first appeal of this case,[20] to the effect that their new plan is better than the one it would supersede. But they can not prevail on this basis, as their maximum variance between overpopulated and underpopulated districts is 11,039—or approximately fifty times higher than my variance of 235. However, I do not argue the numbers game; I simply point out the figures. They attempt the further justification that they do not split counties. But there is nothing sacred about a county, or for that matter a township or a city. These political subdivisions of the State exist purely for its convenience for the purpose of assessing and collecting ad valorem

10. Cleveland and Baugo Townships, combined population 7,206, and Census Enumeration Districts 8–N, 9–N, 10–19, inclusive, 29, 34, 35, 36 and 38–N, all in Concord Township in the City of Elkhart, containing a population of 19,750.

11. For townships see Table III.

12. All of Benton County, except Union Township thereof, population 11,372; Townships of Jackson, Lauramie, Randolph, Sheffield, Shelby, Union, Wayne and Wea of Tippecanoe County, total population 13,459.

13. Widner, Vigo and Steen Townships.

14. Franklin and Clay Townships of Hendricks County, total population 2,977; Adams, Ashland, Clay, Gregg and Jefferson Townships of Morgan County, total population 7,219.

15. The geographic area transferred is a part of Warren Township of Marion County, being Census Enumeration Districts 137–P, 138–P, 138–R, 427, 428–N, 428–Pa and 428–Pb, all in Census Tract 601, and containing a total population of 4,921.

16. Jackson Township of Blackford County, population 1,527, and Union Township of Howard County, population 769.

17. Fugit Township of Decatur County, population 1,071.

18. The geographic area transferred is a part of Center Township of Marion County, contained in Census Tract 506, Census Enumeration District 194 of Census Tract 523, and Census Enumeration District 123 of Census Tract 507, containing a total population of 9,274.

19. e. g., Assume starting with the overpopulated 8th: the transfer must be to the 7th, because the other adjacent district, the 9th, is also overpopulated; the only underpopulated district touched by the overpopulated 5th and 11th is the 10th, so their transfers must be to it, etc.

20. Duddleston v. Grills, 385 U.S. 455, 87 S.Ct. 611, 17 L.Ed.2d 508, vacating and remanding Grills v. Branigin, S.D. Ind., 1966, 255 F.Supp. 155; cf. Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L. Ed.2d 501.

taxes, and performing various administrative chores. The constitutionality of splitting political subdivisions has been established by the decision of the Supreme Court of the United States affirming such a plan;[21] hence the excuse advanced by the majority for their plan is not a satisfactory explanation for their curious moving from district to district of approximately 25 per cent of the population of the State.

I must therefore dissent from that which I firmly believe to be the unconstitutional assumption of a power vested exclusively in the General Assembly by Article 1, Section 4 of the Constitution by

a court which further lacks the jurisdiction to do so by reason of the limited powers granted to it by Article 3, Section 2 of the Constitution. The action of the majority is thus doubly unconstitutional, if such a thing be possible.

My dissenting opinion, filed February 14, 1968, contained an error in my suggested correction of the 3d District. I have therefore revised the townships to be transferred from the 2d to the 3d District, and the appropriate tables. The corrected opinion is published in its entirety, in the interest of clarity, and therefore supersedes completely the original opinion.

21. Alton v. Tawes, 384 U.S. 315, 86 S.Ct. 1590, 16 L.Ed.2d 586, affirming Maryland

Committee for Fair Cong. Redist. v. Tawes, D.Md., 1966, 253 F.Supp. 731.

APPENDIX

[Containing Table I (with map), Table II (with map), Table III (with map), and Table IV, Parts 1 and 2]

TABLE I

SHOWING POPULATIONS OF THE VARIOUS CONGRESSIONAL DISTRICTS OF INDIANA AS ESTABLISHED BY CHAPTER 205, ACTS OF THE INDIANA GENERAL ASSEMBLY OF 1965, AND VARIANCES THEREIN

| | | Variance from Average | |
|---|---|---|---|
| District | Population | Overpopulated | Underpopulated |
| 1 | 454,208 | + 30,345 | |
| 2 | 431,064 | + 7,201 | |
| 3 | 384,079 | | − 39,784 |
| 4 | 450,937 | + 27,074 | |
| 5 | 426,110 | + 2,247 | |
| 6 | 438,961 | + 15,098 | |
| 7 | 369,663 | | − 54,200 |
| 8 | 443,252 | + 19,389 | |
| 9 | 424,933 | + 1,070 | |
| 10 | 406,218 | | − 17,645 |
| 11 | 433,073 | + 9,210 | |
| | 4,662,498 | +111,634 | −111,629 |

NOTES

1. Total Population, 1960 Census = 4,662,498
2. Ideal District Population = 4,662,498/11 = 423,863

(Since the indicated division leaves a remainder of 5, the overpopulated district total population exceeds that of the underpopulated total by this amount.)

3. Configuration of Districts is as shown graphically on attached outline map. All Districts contain complete counties, as indicated, except as follows:

   (a) The 1st District consists solely of North, Calumet, and Hobart Townships of Lake County.

   (b) The 2d District consists of complete counties as indicated on the map, plus all of Lake County except North, Calumet, and Hobart Townships.

   (c) The 6th District consists of complete counties as indicated on the map, plus Pike, Washington, Decatur, Perry, Franklin, and Warren Townships of Marion County.

   (d) The 10th District consists of complete counties as indicated on the map, plus Lawrence Township of Marion County.

   (e) The 11th District consists solely of Center and Wayne Townships of Marion County.

INDIANA
CONGRESSIONAL
DISTRICTS
(CH. 205, 1965 ACTS)

COUNTY POPULATION
FIGURES PER
1960 CENSUS

(NOTE: MARION
+ LAKE COUNTY
FIGURES BROKEN
DOWN INTO
VARIOUS PARTS
AS INDICATED).

## TABLE II

SHOWING COUNTIES AND PARTS OF COUNTIES SHIFTED BY THE MAJORITY REDISTRICTING PLAN FROM ONE CHAPTER 205 DISTRICT TO ANOTHER, THE RESPECTIVE POPULATIONS THEREOF, AND THE POPULATION AMOUNTS REQUIRED TO HAVE BEEN MOVED TO HAVE ACHIEVED NECESSARY CORRECTIONS TO THE DISTRICTING PLAN CONTAINED IN CHAPTER 205, ACTS OF THE 1965 GENERAL ASSEMBLY OF INDIANA

| District Number | Area Removed From District | District To Which Transferred | 1960 Population Of Area Removed | Number Necessary To Have Been Reduced To Achieve Population Of 423,863 |
|---|---|---|---|---|
| 1 | Hobart Twp. of Lake County | 2 | 39,223 | 30,345 |
| 2 | St. Johns Twp. of Lake County | 1 | 12,282 | 37,546 [1] |
|  | Kosciusko County | 3 | 40,373 |  |
|  | Wabash County | 5 | 32,605 |  |
|  | Cass County | 5 | 40,931 |  |
|  | Fulton County | 5 | 16,957 |  |
|  | Carroll County | 5 | 16,934 |  |
| 3 | LaPorte County | 2 | 95,111 | 0 |
|  | Starke County | 2 | 17,911 |  |
| 4 | Elkhart County | 3 | 106,790 | 27,074 |
| 5 | Huntington County | 4 | 33,814 | 2,247 |
|  | Wells County | 4 | 21,220 |  |
|  | Adams County | 4 | 24,643 |  |
|  | Jay County | 10 | 22,572 |  |
|  | Madison County | 10 | 125,819 |  |
| 6 | Clinton County | 5 | 30,765 | 15,098 |
|  | Boone County | 5 | 27,543 |  |
|  | Montgomery County | 7 | 32,089 |  |
|  | Hendricks County | 7 | 40,896 |  |
|  | Warren Twp. of Marion County | 11 | 60,344 |  |

1, 2.   Include the 30,345 transferred by necessity from the overpopulated 1st District to the overpopulated 2d District, thus requiring a retransfer out of the 2d District.

Note:  A map showing the congressional district lines established by Chapter 205, and also the lines established by the majority of this court is attached hereto.

| District Number | Area Removed From District | District To Which Transferred | 1960 Population Of Area Removed | Number Necessity To Have Been Reduced To Achieve Population of 423,863 |
|---|---|---|---|---|
| 7 | Daviess County | 8 | 26,636 | 0 |
| 8 | Martin County | 7 | 10,608 | } 19,389 |
|  | Floyd County | 9 | 51,397 | |
| 9 | Orange County | 8 | 16,877 | } 1,070 |
|  | Shelby County | 6 | 34,093 | |
| 10 | Tipton County | 5 | 15,856 | |
|  | Hamilton County | 5 | 40,132 | |
|  | Hancock County | 6 | 26,665 | } 0 |
|  | Rush County | 6 | 20,393 | |
|  | Lawrence Twp. of Marion County | 11 | 34,405 | |
| 11 | Wayne Twp. of Marion County | 6 | 99,722 | 9,210 |
|  | Totals | | 1,215,606 | 141,979 [2] |

1, 2. Include the 30,345 transferred by necessity from the overpoplated 1st District to the overpopulated 2d District, thus requiring a re-transfer out of the 2d District.

Note: A map showing the congressional district lines established by Chapter 205, and also the lines established by the majority of this court is attached hereto.

NDIANA: CONG
DISTRICTS PER
H.205 (1965ACT)
HOWN BY
OLID LINES

DISTRICTS AS
ANGED BY
OURT MAJORITY
HOWN BY
KEEN LINES.

OUNTIES
IVED BY
IURT ARE
HADED.

## TABLE III

SHOWING THE PARTS OF COUNTIES (INCLUDING ONE COMPLETE COUNTY) SHIFTED BY MY CONSTITUTIONAL CORRECTIONAL PLAN FROM ONE CHAPTER 205 DISTRICT TO ANOTHER, THE RESPECTIVE POPULATIONS THEREOF, AND THE POPULATION AMOUNTS REQUIRED TO HAVE BEEN MOVED TO HAVE ACHIEVED NECESSARY CORRECTIONS TO THE DISTRICTING PLAN CONTAINED IN CHAPTER 205, ACTS OF THE 1965 GENERAL ASSEMBLY OF INDIANA

| District Number | Area Removed From District | District To Which Transferred | 1960 Population Of Area Removed | Number Necessary To Have Been Reduced To Achieve Population of 423,863 |
|---|---|---|---|---|
| 1 | Part of Hobart Twp. of Lake County (Table IV, Part 2) | 2 | 30,297 | 30,345 |
| 2 | Jackson, Morgan, Pine, Pleasant and Washington Twps. of Porter County | 3 | 8,034 | |
| | Kankakee Twp. of Jasper County | 3 | 576 | |
| | Cass, Franklin, Rich Grove and Tippecanoe Twps. of Pulaski County | 3 | 3,141 | 37,498 [1] |
| | Aubbeenaubbee Twp. of Fulton County | 3 | 1,009 | |
| | Jackson, Lauramie, Randolph, Sheffield, Shelby, Union, Wayne, and Wea Twps. of Tippecanoe County | 7 | 13,459 | |
| | Benton County, except Union Twp. of such county | 7 | 11,372 | |
| 3 | Underpopulated District, No Chapter 205 area moved out | | 0 | 0 |
| 4 | Baugo and Cleveland Twps. of Elkhart County | 3 | 7,206 | 27,074 |
| | Part of Concord Twp. of Elkhart County (Table IV, Part 2) | 3 | 19,750 | |

1, 2. See Notes 1, 2 on Page 198.

| District Number | Area Removed From District | District To Which Transferred | 1960 Population of Area Removed | Number Necessity To Have Been Reduced To Achieve Population Of 423,863 |
|---|---|---|---|---|
| 5 | Jackson Twp. of Blackford County | 10 | 1,527 | |
| | Union Twp. of Howard County | 10 | 769 | 2,247 |
| 6 | Part of Warren Twp. of Marion County (Table IV, Part 2) | 10 | 4,921 | |
| | Franklin and Clay Twps. of Hendricks County | 7 | 2,977 | 15,098 |
| | Adams, Ashland, Clay, Gregg and Jefferson Twps. of Morgan County | 7 | 7,219 | |
| 7 | Underpopulated District, No Chapter 205 area moved out | | 0 | 0 |
| 8 | Martin County | 7 | 10,608 | |
| | Widner, Vigo and Steen Twps. of Knox County | 7 | 8,669 | 19,389 |
| 9 | Fugit Twp. of Decatur County | 10 | 1,071 | 1,070 |
| 10 | Underpopulated District, No Chapter 205 area moved out | | 0 | 0 |
| 11 | Part of Center Twp. of Marion County (Table IV, Part 2) | 10 | 9,274 | 9,210 |
| | | Totals | 141,879 | 141,931 [2] |

1, 2. Include the 30,297 transferred by necessity from the overpopulated 1st District to the overpopulated 2d District, thus requiring a retransfer out of the 2d District.

Notes: 1. Where Table IV, Part 2 is referred to in the above summary, the metes and bounds descriptions of areas transferred which do not follow county or township lines are set out in full in the written description of corrected districts contained in such table.

2. A map showing the congressional district lines established by Chapter 205 and also the necessary corrections thereto made by myself is attached hereto.

INDIANA CONG.
ISTRICTS per
705 (1965 Acts)
SHOWN BY
OLID LINES

DISTRICTS AS
:RRECTED BY
E SHOWN BY
ROKEN LINES

REAS MOVED
EFFECT CON-
TITUTIONAL
PULATION
ALANCE ARE
HADED

OPULATION
IGURES ARE
F DISTRICTS
CORRECTED

## TABLE IV – Part 1

### SHOWING POPULATIONS OF THE VARIOUS CONGRESSIONAL DISTRICTS OF INDIANA AS ESTABLISHED BY CHAPTER 205, ACTS OF THE INDIANA GENERAL ASSEMBLY OF 1965, AS CORRECTED IN A CONSTITUTIONAL MANNER

| District | Population | Variance from Average | |
|---|---|---|---|
| | | Overpopulated | Underpopulated |
| 1 | 423,911 | + 48 | |
| 2 | 423,770 | | — 93 |
| 3 | 423,795 | | — 68 |
| 4 | 423,981 | + 118 | |
| 5 | 423,814 | | — 49 |
| 6 | 423,844 | | — 19 |
| 7 | 423,967 | + 104 | |
| 8 | 423,975 | + 112 | |
| 9 | 423,862 | | — 1 |
| 10 | 423,780 | | — 83 |
| 11 | 423,799 | | — 64 |
| | 4,662,498 | + 382 | — 377 |

### NOTES

1.  Total Population, 1960 Census = 4,662,498
2.  Ideal District Population = 4,662,498/11 = 423,863 (Since the indicated division leaves a remainder of 5, the over-populated district total population exceeds that of the under-populated total by this amount.)

## TABLE IV–Part 2

### SETTING OUT THE DESCRIPTIONS OF THE VARIOUS ELEVEN CONGRESSIONAL DISTRICTS IN INDIANA AS CORRECTED IN A CONSTITUTIONALLY PERMISSIBLE MANNER

### FIRST DISTRICT

Calumet, North and Hobart Townships of Lake County, save and except a part of said Hobart Township more particularly described by metes and bounds as follows: Beginning at the southwest corner of said township, and running thence north to 29th Avenue, thence running east to Deep River, thence in an easterly direction, along and with said Deep River to Grand Boulevard, thence north to the right of way to the Michigan Central Railroad, thence in a northeasterly direction along and with said railroad to Union Street, thence south to Central Avenue, thence east to the township line, thence south along said township line to the southeast corner of said Hobart Township, thence west to the place of beginning.

### SECOND DISTRICT

The counties of Carroll, Cass, Kosciusko, Newton, Wabash and White; also, that part of Hobart Township of Lake County described as follows: Beginning at the southwest corner of said township, and running thence north to 29th Avenue, thence running east to Deep River, thence in an easterly direction, along and with said Deep River to Grand Boulevard, thence north to the right of way to the Michigan Central Railroad,

thence in a northeasterly direction along and with said railroad to Union Street, thence south to Central Avenue, thence east to the township line, thence south along said township line to the southeast corner of said Hobart Township, thence west to the place of beginning; also, the townships of Cedar Creek, Center, Eagle Creek, Hanover, Ross, St. John, West Creek, and Winfield in Lake County; also, the townships of Boone, Center, Liberty, Portage, Porter, Union and Westchester in Porter County; also, Union Township in Benton County; also, the townships of Fairfield, Perry, Tippecanoe, Wabash and Washington in Tippecanoe County; also, the townships of Barkley, Carpenter, Gillam, Hanging Grove, Jordan, Keener, Marion, Milroy, Newton, Union, Walker, and Wheatfield in Jasper County; also, the townships of Beaver, Harrison, Indian Creek, Jefferson, Monroe, Salem, Van Buren, and White Post in Pulaski County; also, the townships of Henry, Liberty, Newcastle, Richland, Rochester, Union and Wayne in Fulton County.

## THIRD DISTRICT

The counties of LaPorte, Marshall, Starke, and St. Joseph; also, Baugo and Cleveland Townships in Elkhart County; also, a part of Concord Township in Elkhart County described as follows: All that part of the City of Elkhart lying in Concord Township and being north of the right of way of the New York Central Railroad Company, and also a part thereof beginning at the intersection of Oakland Avenue and the right of way of the said New York Central Railroad Company, and running northeasterly along and with said right of way to South Main Street, thence southeasterly along and with said street to Hickory Street, thence southwesterly along and with Hickory Street to South 6th Street, thence south to West Indiana Avenue, thence east to Benham Avenue, thence south to Wolf Avenue, thence west to 8th Street, thence south to Lusher Avenue, thence west to Oakland Avenue, thence north to the place of beginning; also, the townships of Jackson, Morgan, Pleasant, Pine, and Washington in Porter County; also, Kankakee Township in Jasper County; also, Cass, Franklin, Rich Grove, and Tippecanoe Townships in Pulaski County; also, Aubbeenaubbee Township in Fulton County.

## FOURTH DISTRICT

The counties of Allen, DeKalb, LaGrange, Noble, Steuben and Whitley; also, the townships of Benton, Clinton, Elkhart, Harrison, Jackson, Jefferson, Locke, Middlebury, Olive, Osolo, Union, Washington and York in Elkhart County; also, all of Concord Township in Elkhart County except that part described as follows: All that part of the City of Elkhart lying in Concord Township and being north of the right of way of the New York Central Railroad Company, and also a part thereof beginning at the intersection of Oakland Avenue and the right of way of the said New York Central Railroad Company, and running northeasterly along and with said right of way to South Main Street, thence southeasterly along and with said street to Hickory Street, thence southwesterly along and with Hickory Street to South 6th Street, thence south to West Indiana Avenue, thence east to Benham Avenue, thence south to Wolf Avenue, thence west to 8th Street, thence south to Lusher Avenue, thence west to Oakland Avenue, thence north to the place of beginning.

## FIFTH DISTRICT

The counties of Adams, Grant, Jay, Huntington, Madison, Miami and Wells; also, the townships of Harrison, Licking and Washington in Blackford County; also, the townships of Center, Clay, Ervin, Harrison, Honey Creek, Howard, Jackson, Liberty, Monroe and Taylor in Howard County.

## SIXTH DISTRICT

The counties of Boone, Clinton, Johnson and Montgomery; also, the townships of Brown, Center, Eel River, Guilford, Liberty, Lincoln, Marion, Middle, Union and Washington in Hendricks County; also, the townships of Baker, Brown, Greene, Harrison, Jackson, Madi-

son, Monroe, Ray and Washington in Morgan County; also, the townships of Pike, Washington, Decatur, Perry and Franklin in Marion County; also, Warren Township in Marion County except a part thereof beginning at the northwest corner of said township and running thence south to 25th Street, thence east to Hawthorne, thence south to 21st Street, thence east to Ritter Avenue, thence north to the right of way of the C. C. C. & St. L. Railroad, thence northeasterly along said railroad right of way to Arlington Avenue, thence north to the township line of said Warren Township, thence west to the place of beginning.

## SEVENTH DISTRICT

The counties of Brown, Clay, Daviess, Fountain, Green, Martin, Monroe, Owen, Parke, Putnam, Sullivan, Vermillion, Vigo, and Warren; also, the townships of Bolivar, Center, Gilboa, Grant, Hickory Grove, Oak Grove, Parish Grove, Pine, Richland and York in Benton County; also, the townships of Jackson, Lauramie, Randolph, Sheffield, Shelby, Union, Wayne and Wea in Tippecanoe County; also, the townships of Clay and Franklin in Hendricks County; also, the townships of Adams, Ashland, Clay, Gregg and Jefferson in Morgan County; also, the townships of Widner, Vigo and Steen in Knox County.

## EIGHTH DISTRICT

The counties of Crawford, Dubois, Floyd, Gibson, Harrison, Perry, Pike, Posey, Spencer, Vanderburgh and Warrick; also, the townships of Busseron, Decker, Harrison, Johnson, Palmyra, Vincennes and Washington in Knox County.

## NINTH DISTRICT

The counties of Bartholomew, Clark, Dearborn, Fayette, Franklin, Jackson, Jefferson, Jennings, Lawrence, Ohio, Orange, Ripley, Scott, Shelby, Switzerland and Washington; also, the townships of Adams, Clay, Clinton, Jackson, Marion, Salt Creek, Sand Creek and Washington in Decatur County.

## TENTH DISTRICT

The counties of Delaware, Hamilton, Hancock, Henry, Randolph, Rush, Tipton, Union and Wayne; also, Fugit Township in Decatur County; also, Lawrence Township in Marion County, also, a part of Warren Township in Marion County described as follows: Beginning at the northwest corner of said township and running thence south to 25th Street, thence east to Hawthorne, thence south to 21st Street, thence east to Ritter Avenue, thence north to the right of way of the C. C. C. & St. L. Railroad, thence northeasterly along said railroad right of way to Arlington Avenue, thence north to the township line of said Warren Township, thence west to the place of beginning; also, a part of Center Township in Marion County described as follows: Beginning at the northeast corner of said township, and running thence west on 38th Street to Dearborn Street, thence south to 34th Street, thence east to Gale Street, thence south to 33d Street, thence in a southeasterly direction along 33d Street to Sherman Drive, thence south to 30th Street, thence east to Emerson Avenue, thence north to the place of beginning; also, Jackson Township of Blackford County; also, Union Township of Howard County.

## ELEVENTH DISTRICT

Wayne Township of Marion County; also, Center Township of Marion County, except a part of said Center Township described as follows: Beginning at the northeast corner of said township, and running thence west on 38th Street to Dearborn Street, thence south to 34th Street, thence east to Gale Street, thence south to 33d Street, thence in a southeasterly direction along 33d Street to Sherman Drive, thence south to 30th Street, thence east to Emerson Avenue, thence north to the place of beginning.

All references are to existing lines as the same were established and fixed on December 31, 1960.